**DREXEL ENGINEERING & MANUFAC-TURING, INC., Appellant,**

v.

**Frank W. SHERRON, Respondent.**

**No. WD 33025.**

Missouri Court of Appeals, Western District.

Jan. 18, 1983.

James E. Thompson, Jr., Harrisonville (Crouch, Crouch, Spangler & Douglas, Harrisonville, of counsel), for appellant.

Edgar S. Carroll, Warrensburg, for respondent.

Before SHANGLER, P.J., and PRITCH-ARD and DIXON, JJ.

PRITCHARD, Judge.

Respondent Sherron recovered judgment upon his counterclaim for sales commissions and supervisory fees in this court-tried case for $7,168.13. The issues presented by Drexel are whether there was evidence submitted by Sherron of percentages due under the employment contract; whether there was a binding prior interpretation of the contract as evidenced by the actions of the parties; whether the trial court erred in failing to credit Drexel for claimed payments, $981.57, made by it to Sherron; and whether there was substantial evidence of supervisory fees due Sherron.

Drexel was engaged in custom work steel fabrication. By written agreement on January 2, 1980, it employed Sherron as a sales representative. The provision for his compensation is this: "4. COMPENSATION. In consideration of your services, we agree to pay you a commission according to the following schedule: On the first $15,000.00 of new projects or new accounts sales—12% On the next $10,000.00 of annual sales—10% The next $10,000.00 of annual sales—8% On all sales above $35,000.00 annual—6%." On the contract as originally typewritten, the word "annual" was crossed out, and the words "NEW PROJECTS OR NEW ACCOUNTS" were substituted in ink printing, which alteration Sherron testified he made, then having a discussion about what the new words meant with Drexel's Mr. Painter. Pursuant to its terms, the agreement was terminated by Sherron on October 20, 1980, after a dispute was had over the amount of commissions owed to him.

Sherron gave this as his interpretation of the modification "New Projects or New Accounts" from his discussion with Mr. Painter: The reason for the modification

was for the situation where he called upon a firm which may have an interest in having something fabricated which Drexel would have an interest in supplying, which would be a new account to which the commission schedule would apply. If he called on a plant where something more than an original sale was going on, a 6% commission would apply on the original sale, and the discussion was centered on a new project— something different. "A new item is something unique and different from what we have done before. * * * And it involved investigation into the amount and type of material, amount and type and cost of material, estimated amount of labor hours of various skills required, other incidental costs related to the fabrication, delivery and possible installation of the product." It was Sherron's job to get detailed information upon which a bid might be submitted in the hope of being the successful bidder. Sherron testified that a Kansas City Power and Light Company account was a new one acquired by his efforts, and that he was successful in obtaining bids on projects of the Anaconda Company and the Carmel Energy Company. On the Anaconda job, he was to have a $5,000.00 flat lump sum for supervising the movement and utilization of the equipment, removal of other equipment and installation of the new equipment, and his commission was to have been 12% of the total cost, minus the supervisory fee of $5,000.00. Using his interpretation of the three accounts (that they were new accounts or new projects), he calculated for the court that there was due him on the Anaconda account, $3,917.08; Kansas City Power and Light, $1,070.16; and Carmel Energy, $2,180.89, a total of $7,168.13. The balance he claimed was due on the supervisory fee was included. It was Sherron's further testimony that Drexel's Mr. Painter first indicated that the Anaconda account was an "old job" and offered him the $5,000.00 bonus and 6% of the remaining balance of the contract, instead of 12%, as his commission, then Mr. Painter reconsidered and said it was a new project, and offered Sherron a different amount, but the check therefor did not include the full

$5,000.00 supervisory fee. Drexel had sent Sherron a check for $2,180.89, for the balance of the Carmel commission, but stopped payment on it.

Drexel admitted that it owed Sherron $2,180.89 on the Carmel account; claims that he was overdrawn $178.14 on the Anaconda account; is owed only $574.83 on the Kansas City Power and Light account; and that he was to be paid $150.00 per day for the supervisory services for Anaconda, he being paid $2,600 on that basis, and he was not to be paid a flat fee of $5,000, as Sherron claimed. Drexel defined a "new project" as one which is over and beyond what the normal customer would be buying in small job lots. "As an illustration, if a customer wanted to build a new plant and he went in and helped him engineer the equipment for it, that would be a new project." It denied Sherron handled any new projects, but acknowledged that he handled new accounts.

The resolution of this case by the trial court turned upon its belief as to what constituted "new projects" so as to apply the applicable contract commission percentages; whether there existed a flat $5,000.00 supervisory fee, or compensation of $150.00 per day with $2,600.00 paid on that basis; and whether Sherron's computation figures or Drexel's were correct in computing amounts due. [Drexel says that there is due $2,301.52 to Sherron, and asks that the trial court be directed to enter a new judgment for that amount, based, of course, on its evidence and computations.] All this testimony conflicts, and the resolution thereof rests, historically, with the trial court. *Modine Manufacturing Company v. M.F. Carlock*, 510 S.W.2d 462, 471 [13] (Mo. 1974).

Drexel says, however, that the parties, including Sherron, placed a prior construction of the agreement which would preclude Sherron from recovery. The contention is that Sherron was paid upon a sliding scale, 12%, 10% and 8% of the (basic) contract and voiced no protest. Sherron did not disagree that he accepted payments of lower amounts on one job, the Kansas City Power

and Light work, and he was aware that the proper commissions were probably not being paid thereon. The amounts were not large, and were paid a short time before Anaconda commissions were to be paid which brought into focus the disagreement of the parties as to the manner of computation of commissions due. This is hardly a binding construction of the contract by Sherron. He explained to the trial court his interpretation of the contract at the time it was executed, and the trial court accepted that view.

Drexel claims that it paid Sherron $17,-372.07, and that he was owed only $16,-390.50, thus it is entitled to a credit of $981.57. These computations are based upon Drexel's interpretation of the contractual commissions due. Sherron admitted that he had received payments, but did not agree that they were correct as to the manner of calculation. The evidence of his calculations of commissions due were before the trial court, and it was entitled to believe his version. The judgment of the trial court is supported by substantial evidence; it is not against the weight of the evidence; and there is no erroneous declaration or application of the law.

The judgment is affirmed.

All concur.